STEPHENSON, Executor, Appellant, vs. AGRICULTURAL INSUR-
ANCE COMPANY, Respondent.

SAME, Appellant, vs. LONDON & LIVERPOOL & GLOBE INSUR-
ANCE COMPANY, Respondent.

SAME, Appellant, vs. CONTINENTAL INSURANCE COMPANY,
Respondent.

SAME, Appellant, vs. PRUSSIAN NATIONAL INSURANCE COM-
PANY, Respondent.

*December 17, 1902—January 13, 1903.*

*Fire insurance: Standard policy: "Loss": "Amount of the insur-
ance": "Amount of loss": Apportionment of loss: Co-insurers.*

1. Under sec. 1941—43, Stats. 1898, providing that, by the standard
   fire policy of Wisconsin, the property covered is insured against
   *loss* to an amount "not exceeding —— dollars," the word "loss"
   is used, not as a limitation upon the amount of the insurance,
   but primarily as a limitation of the liability.

2. Under the standard fire policy of Wisconsin (sec. 1941—43 to
   sec. 1941—62, Stats. 1898), "the amount of the insurance" is the
   maximum amount of the risk assumed—the face of the policy.

3. Under said standard fire policy the "amount of loss" is the ad-
   justed damage by fire to the property covered by the policy.

4. Under said standard fire policy the "amount of liability," as to
   any particular loss, is the amount of the adjusted damages
   properly apportionable to the policy.

5. Sec. 1941—43, Stats. 1898, prescribing the formal part of the
   standard fire insurance policy, enacts that the formal parts
   thereof shall provide for insurance against loss to an amount
   "not exceeding —— dollars," etc., and sec. 1941—58 provides
   that other formal parts of such policy shall contain provisions
   that the insurer shall not be liable for a greater proportion of
   loss than the "amount insured" shall bear to the "whole insur-
   ance." A policy on a Wisconsin standard form contained a
   provision that, in consideration of a reduced rate of premium,
   the assured agreed to maintain insurance to the extent of eighty
   per cent. of the value of the property, and "if at the time of fire
   the whole amount of insurance on said property shall be less
   than eighty per cent., this company shall, in case of loss or
   damage less than said eighty per cent., be liable for only such
   portion thereof as the amount insured by this policy shall bear

to said eighty per cent. of such actual cash value of such prop-
erty." During the life of the policy, and while the insurance in
force was less than eighty per cent. of the value of the prop-
erty, the property was damaged by fire to an extent less than
eighty per cent. of its value. *Held:*

(1) That the language of the policy indicated that the con-
tracting parties understood the result of a failure by the as-
sured to take out sufficient insurance to equal eighty per cent.
of the cash value of the property would not be a reduction of
the amount of insurance effected by the policy, but such a divi-
sion of any loss apportioned to the face of the policy out of the
whole insurance between the company and the assured, as would
make him bear the burden that would otherwise be cast on it
by his failure to take out insurance up to the limit specified.

(2) That in apportioning the loss as between the different
insurers, the amount of insurance effected by the policy was its
face; but as between the underwriter of that particular policy
and the assured, the latter should bear, as co-insurer, any loss
not regularly insured against by his failure to take out the full
amount of insurance agreed upon.

6. Sec. 1943*a*, Stats. 1898, prohibits the issuance of any policy con-
taining any provision limiting the amount to be paid in case
of loss below the actual cash value of the property, if within
the amount of insurance for which premiums are paid, and pro-
hibits the use of any co-insurance clause or rider except under
named conditions. Several standard form policies were issued
on a building. The one issued by the M. company contained a
clause, in effect, that, if the property were not kept insured
up to eighty per cent. of its value, the insurer would be liable
for only such portion of the policy as the amount insured
therein should bear to such eighty per cent. The building was
not insured up to eighty per cent. when a loss occurred. In an
action against companies, other than the M. company, it was
*held* that sec. 1943*a* did not apply, the policies sued on contain-
ing none of the prohibited features; that the circumstance pre-
venting the assured from obtaining full indemnity was the M.
company's policy, containing a limitation of liability pursuant
to said sec. 1943*a*, and the assured's election thereby to carry
part of the insurance himself.

7. Several standard form insurance policies were issued on a build-
ing. The one issued by the M. company contained a clause, in
effect, that, in consideration of a reduced premium, insured
agreed to keep in force insurance up to eighty per cent. of the
cash value of the property insured, and, if he failed so to do,
that the insurer in such policy should, in case of loss or damage

less than eighty per cent., be liable for only such portion thereof as the amount of insurance in force should bear to such eighty per cent. There was a loss of less than eighty per cent. at a time when the assured had failed to keep up insurance to eight; per cent. of its value. Action was brought against companie᷈ other than the M. company. *Held*, that the defendant co panies must be held liable according to their contracts and u further; that the fact that the insured by his contract with th᷈ M. company had stipulated away his right to full indemnity an received consideration therefor, did not relieve the defendant companies, whose premium was fixed with reference to such portion of the loss as the face of their policies, respectively, bore to the whole insurance on the property, from full contribution.

. APPEALS from judgments of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed*.

Plaintiffs' testator took out insurance on a building situated in the city of Milwaukee, Wisconsin, as follows: *Agricultural Insurance Company* of Watertown, New York, $5,000; *Liverpool & London & Globe Insurance Company*, $5,000; *Continental Insurance Company*, $5,000; *Prussian National Insurance Company*, $2,500; Northwestern National Insurance Company, $5,000; Milwaukee Fire Insurance Company, $5,000; and the Milwaukee Mechanics' Insurance Company, $7,500,—the policy in the latter company, however, containing a provision requiring insurance to be kept upon the property to the amount of eighty per cent. of the actual cash value thereof, and providing that in case of a failure so to do, and a fire occurring, the liability under such policy, should be limited to the amount that would be apportioned thereto in the event of the full amount of insurance being carried. The language of the policy in regard to the matter was as follows:

"At the option of the assured, and in consideration of the reduced rate of premium charged for this policy, the assured hereby agrees to maintain insurance during the life of this policy, upon the property hereby insured, to the extent of eighty (80) per cent. of the actual cash value thereof, and it is mutually agreed that if at the time of the fire the whole

amount of insurance on said property shall be less than such eighty (80) per cent. this company shall, in case of loss or damage less than such eighty (80) per cent., be liable for only such portion thereof as the amount insured by this policy shall bear to said eighty (80) per cent. of such actual cash value of such property."

Other than that stipulation, all of the policies were alike. The form thereof was that of the standard policy of this state, one of the provisions being, in accordance with sec. 1941—58, Stats. 1898, as follows:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property or for loss by and expense of removal from premises endangered by fire than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss may be provided for by agreement or condition written hereon or attached or appended hereto. Liability for re-insurance shall be as specifically agreed hereon."

While all the policies were in force the property insured was damaged by fire to the amount of $14,169.50. The actual cash value thereof, when the fire occurred, was $94,000. Default was made by some of the companies as to paying their respective proportions of the adjusted loss. Suits were thereupon brought against them respectively as follows: Against the *Agricultural Insurance Company* for $2,319.33 with interest; against the *Liverpool & London & Globe Insurance Company* for the same amount; against the *Continental Insurance Company* for a like amount; against the *Prussian National Insurance Company* for $1,159.66.

The only issue made by the answers, litigated and required to be reviewed upon these appeals, is as to whether the total amount of the insurance on the building when the fire occurred was $35,000 or $30,546.53. In the complaint the latter amount was alleged to be correct, while in each of the

answers the former was insisted upon. Plaintiffs claimed that the $7,500 policy, so called, was in fact, by force of its limitation clause, reduced in proportion to the amount of the deficiency of insurance on the property under the eighty per cent. clause of the policy. Defendants claimed that the policy should be counted at its face, $7,500, in apportioning the loss. The trial court decided in favor of the latter view and ordered judgments accordingly, which were rendered, one against each of the companies. A separate appeal was taken from each of such judgments.

For the appellant there were briefs by *Cary, Upham & Black,* and oral argument by *E. L. Richardson.*

For the respondents there was a brief by *Van Dyke & Van Dyke & Carter,* and oral argument by *W. D. Van Dyke.*

MARSHALL, J. This appeal calls for the solution of two questions concerning the construction of significant words in this part of sec. 1941—58, Stats. 1898.

"This company shall not be liable under this policy for a greater proportion of any *loss* on the described property . . . than the *amount hereby insured* shall bear to the *whole insurance,* whether valid or not."

These are the questions: (1) Do the words "amount hereby insured" refer to the face of the policy,—the maximum amount of risk assumed under any and all circumstances? (2) Do the words "whole insurance" refer to the aggregate of the maximum risks assumed by all insurers in respect to the property? Affirmative answers will lead to an affirmaance of the judgments.

Courts elsewhere have had the subject before us up for consideration to some extent. In respondents' favor we are referred to *Armour P. Co. v. Reading F. Ins. Co.* 67 Mo. App. 215, and *Farmers' F. Co. of New Jersey v. Scottish U. & N. Ins. Co.* 72 N. Y. Supp. 732. The language of the insurance contracts was the same, substantially, as here. In the first

case the effect of a provision like the eighty per cent. clause of the Milwaukee Mechanics' Insurance Company policy, as regards features of the contract similar to those of our standard policy, required by sec. 1941—58, Stats. 1898, was considered. It was to the effect that in case of a loss, the part apportioned to a particular company should be on the basis of there being insurance on the property to the extent of eighty per cent. of the cash value thereof, and if there was not that amount of insurance in fact, that the loss as to the deficiency should fall on the assured as a co-insurer. The court, in reaching a conclusion, seems to have ignored the plain language in that regard. It held that the liability of the company was the amount of the insurance under the policy; that the amount of the insurance was not the face of the policy, but the face scaled down in proportion to the failure of the assured to comply with the eighty per cent. clause; that the reduced amount was the proper sum to be considered in making up the "whole insurance" and in apportioning the loss between the several companies concerned so as to give the assured full indemnity for his loss within the range of the policies. That cast a burden on some of the companies which the assured expressly stipulated to bear himself, receiving a consideration therefor in the form of a reduction of the premium paid. In the second case the court held that the amount of the insurance was synonymous with the amount of the loss, and the latter synonymous with the liability; that a determination of the amount of the insurance necessarily waited upon the adjustment of the loss. "It might not be," said the court, "the maximum amount named in each of the policies. How much insurance was effected by each policy depended upon the sound value of the property covered at the time of the loss, diminished by twenty per cent." The policy contained a clause similar to that in those under consideration here, and required by sec. 1941—43, Stats. 1898, fixing the amount of the insurance at a sum sufficient to cover

all loss not exceeding a specified amount. The words "and not exceeding," etc., specifying the maximum amount of the risk assumed, inclined the court to hold that the true amount of the insurance was determinable only in the event of a loss. We cannot agree with that view. It seems to violate the plain meaning of the language of the policies. We will endeavor to show that such is the case.

In that part of the policy corresponding to sec. 1941—43, Stats. 1898, the word "loss" is used, not as a limitation upon the amount of the insurance, but primarily as a limitation upon the amount of the liability. That is obvious, since payment of one loss does not cancel the policy unless it equals the maximum amount of risk assumed. If it is less, it is only a *pro tanto* satisfaction of the policy. The company remains liable thereafter to be called upon time after time during the policy period, the policy being kept alive by compliance with its provisions, till an amount equal to the face thereof shall have been paid. It must follow that the amount of insurance effected by a policy is one thing, the amount of the loss in any particular instance another, and the liability to pay on account thereof another. The amount of the insurance is the maximum amount of the risk assumed, the face of the policy; the amount of the loss is the adjusted damage by fire to the property covered by the policy; the amount of the liability as to any particular loss is the amount of the adjusted damages properly apportionable to the policy.

What has been said as to what constitutes the amount of the insurance under that part of the standard policy, as regards sec. 1941—43, Stats, 1898, applies to that part embodying sec. 1941—58, Id. Note the plain distinction in the latter section between "amount hereby insured," or "whole insurance," and "loss:" "This company shall not be liable under this policy for a greater proportion of any loss . . . than the *amount hereby insured* shall bear to the *whole insurance.*" To say that the terms "liability," "loss," and "amount in-

sured," or "whole insurance," are synonymous, or that the amount of insurance is undeterminable in advance of loss, is well-nigh if not quite absurd. The language of the section as a whole is too plain to admit of any resort to rules for judicial construction to determine its meaning. As indicated, "loss" refers to the damages of the assured measured in money, "liable," or liability, to the amount of such loss which the sufferer under the insurance contract may recover upon the policy, and "amount hereby insured" to the risk assumed under the policy,—the amount which, regardless of any loss paid, remains subject to be drawn upon from time to time to satisfy other losses till it shall have been wholly exhausted.

The amount insured on the face of the Milwaukee Mechanics' Insurance Company policy is $7,500. It was not competent for such company to limit its liability so as in any way to vary the insurance contracts made by respondents. We are unable to see any evidence in its policy of an attempt to do so, or anything out of harmony with the conclusion we have come to. The policy contains the same language as the other policies respecting the risk assumed. It was limited to a particular sum, $7,500, coupled with a condition requiring the assured to carry insurance upon the property to the amount of eighty per cent. of the cash value thereof or to be deemed himself an insurer for the deficiency. That is the effect of the eighty per cent. clause. The maximum amount of its risk was $7,500. The amount of its liability, as between it and the assured, but not as between it and the other companies, was affected by the eighty per cent. clause. The language of the policy indicates that the contracting parties understood the result of a failure by the assured to take out sufficient insurance to equal eighty per cent. of the cash value of the property would not be a reduction of the amount of insurance effected by the policy, but such a division of any loss apportioned to $7,500 out of the whole insurance be-

tween the company and the assured as would make him bear the burden that would otherwise be cast upon it by his failure to take out insurance up to the limit specified. The words "amount of insurance" and "amount insured" are used in the eighty per cent. clause in a way to clearly indicate that they refer to the maximum risk assumed, the $7,500. Here is the language:

"If at the time of fire the *whole amount of insurance* on said property shall be less than eighty per cent., this company shall, in case of loss or damage less than said eighty per cent., be liable for only such portion thereof as the *amount insured by this policy* shall bear," etc.

There can be no mistaking the connection between the significant words in that clause and the maximum risk assumed by the company and by all the companies.

There is abundance of authority supporting the conclusions, that "amount hereby insured" and similar expressions as regards a particular policy, mean maximum amount of risk assumed; that "the whole insurance" and similar expressions as to any given parcel of property covered by several policies of insurance, with or without a limitation of liability clause similar to the one in the Milwaukee Mechanics' Insurance Company policy, mean the aggregate maximum risks assumed under all the policies; that such a limitation of liability clause in a policy does not operate to vary the terms of any other policy; and that the effect of such a clause, and the contractual purpose thereof, is to make the insured a co-insurer to the extent that he fails to place the whole insurance specified. We will mention in the main only cases cited by respondents' counsel. *Oshkosh G. L. Co. v. Germania F. Ins. Co.* 71 Wis. 457, 37 N. W. 819; *Liverpool & L. & G. Ins. Co. v. Verdier,* 35 Mich. 395; *Page v. Sun Ins. Office,* 74 Fed. 203; *Chesbrough v. Home Ins. Co.* 61 Mich. 333, 28 N. W. 110; *Haley v. Dorchester M. F. Ins. Co.* 12 Gray, 545; *East Texas F. Ins. Co. v. Coffee,* 61 Tex. 287; *Good v. Buckeye M.*

*F. Ins. Co.* 43 Ohio St. 394, 2 N. E. 420; *Bardwell v. Conway M. F. Ins. Co.* 118 Mass. 465; *Christian v. Niagara F. Ins. Co.* 101 Ala. 634, 14 South. 374. In the last case cited the court referred to the feature of insurance contracts making the assured a co-insurer as reasonable and one that should be enforced by courts rather than avoided by any attempt to read out of it a justification for a different course by rules of judicial construction. In *Chesbrough v. Home Ins. Co.* there was a limitation of liability clause similar in all respects to the one in this case, and the court treated the amount of insurance effected by the policy, in apportioning the loss between different companies, as the face thereof; but, as between such company and the assured, held that the latter should bear, as a co-insurer, any loss not regularly insured against by reason of his failure to take out the full amount of insurance agreed upon.

Our attention is called to language in sec. 1943a, Stats. 1898, prohibiting the issuance of any policy containing any provision limiting the amount to be paid in case of loss below the actual cash value of the property, if within the amount of insurance for which premiums are paid, and prohibiting the use of any co-insurance clause or rider except under certain conditions mentioned. We are unable to see how such section applies to this case. The policies issued by respondents were free from the prohibited features. They contain only features expressly required by the standard policy law. The circumstances preventing appellants from obtaining full indemnity were the Milwaukee Mechanics' Insurance Company policy, containing a limitation of liability clause pursuant to sec. 1943a, and the assured's election to exercise the option therein stipulated for, to carry a part of the insurance himself.

The claim is made that, taking the policies together, the assured was entitled to full indemnity, and language to that effect is quoted from *Sherman v. Madison Mut. Ins. Co.* 39

Wis. 104. This part of the argument of appellants' counsel is infirm in this: It fails to give weight to the fact that in the case cited the court held that the assured was entitled to full indemnity because that was what he paid for and did not stipulate away. Here the assured did stipulate that he would himself bear such part of the loss apportioned to $7,500 of the whole insurance as should not be collectible of the Milwaukee Mechanics' Insurance Company by reason of the co-insurance clause of its policy. To that extent he stipulated away the right to full indemnity and received the consideration therefor, as we have before indicated. That no part of such consideration went to enrich the respondents, makes no difference, since their own premium rates were made with reference to the clause of their policies limiting their liability to such proportion of any loss as the amount of the insurance taken by them respectively bore to the whole insurance on the property. They must be held liable according to their own contracts and no further, the same as was held in *Sherman v. Madison Ins. Co., supra.*

It follows from the foregoing that the question suggested at the opening of this opinion must be answered in favor of respondents, and the judgments appealed from affirmed.

*By the Court.*—So ordered.