[Civ. No. 17531.   Second Dist., Div. Two.   Aug. 1, 1950.]

B. ALLISON GILLIES et al., Appellants, v. MICHIGAN MILLERS MUTUAL FIRE INSURANCE COMPANY (a Corporation) et al., Respondents.

George Penney, Robert M. Newell, Theodore A. Chester and Rein, Mound & Cotton for Appellants.

Schell & Delamer, Sampson & Dryden and Jacob Swartz for Respondents.

MOORE, P. J.—Appeal from a judgment involving policies of "specific" insurance and "excess" insurance.

October 25, 1946, appellants suffered a loss by fire which destroyed their merchandise to the extent of $34,417.64. On that day they carried three policies of insurance against loss of such property by the following insurers in the following amounts.

| | |
|---|---|
| Michigan Millers Mutual Fire Insurance Co.. | $ 25,000 |
| Northwestern Mutual Fire Association..... | 5,000 |
| Fulton Fire Insurance Company.......... | 80,000* |
| Total ........................... | $110,000 |

Each is referred to herein by the first word of its name.

Following the fire and presentation of claims, a dispute arose among the insurance carriers respecting the extent of liability of each of them under the terms of their respective policies. Being unable to reach an agreement as to the extent of the liability of each, they decided to reimburse their assured for the total loss sustained by the fire according to respondents' formula and thereafter to adjust disputed matters. Pursuant

---

*$80,000 was taken as the basic amount for computing the annual premium on the policy whose liability fluctuated with the changing inventory. However, the policy fixed $115,000 as the maximum liability.

to such decision, within the knowledge of all, they gave to the assured their several drafts as follows:

Michigan ............................ $ 8,298.92
Northwestern ........................ 1,659.75
Fulton .............................. 24,459.07

Thereupon each took from the assured a "loan receipt agreement." Before delivering its draft, Fulton required that it approve the loan receipt agreements executed by both respondents. The drafts issued by the insurers were drawn on forms customarily used by them. Within two months after the fire both respondents cancelled their policies. Two months later appellants filed this action on behalf of Fulton. The case was tried on a stipulation of facts and other documents. The court found that (1) Michigan and Northwestern issued their policies of fire insurance upon the merchandise of appellants; (2) respondents' policies were the only policies of specific insurance in force at the time of the fire; (3) appellants had excess insurance (Fulton's) to which no liability attached until such specific insurance had been exhausted; (4) the total insurance in effect on the day of the fire was $103,682; (5) Michigan's proportionate share of the loss is 25,000/103,-682; Northwestern's is 5,000/103,682; and Fulton's is 73,682/103,682 or the balance, $24,459.07. The premium paid to Fulton was ascertained by taking the monthly average of the value of appellant's merchandise on hand for a year. The court found also that the Fulton policy contains the following provisions:

"5. 'Contributing Insurance Clause.' Permission is granted for other insurance written upon the same plan, terms, conditions, and provisions as those contained in the form attached to this policy, i.e., insurance written under this provisional reporting form. The insurance under this policy in accordance with its printed conditions or riders, shall contribute only with other insurance as herein above defined, against any peril insured by this policy.

"6. 'Specific Insurance.' Insurance other than described in the 'Contributing Insurance Clause' paragraph 5, shall be known as specific insurance for which permission is hereby granted. However, in the computation of the final premium it shall not be permissible to deduct or credit such specific insurance against the values shown in the monthly reports except when

"(a) It has been necessary to procure such insurance to protect values in excess of the limits of liability of this policy, or

"(b) It has been disclosed by written endorsement hereon showing location, expiration and amount.

"7. 'Excess Clause.' This policy does not attach to or become insurance against any peril upon property herein described which at the time of any loss is insured by 'specific insurance' as defined in paragraph 6, until the liability of such 'specific insurance' has been exhausted, and then shall cover only such loss or damage as may exceed the amount due from such 'specific insurance' (including the amount otherwise due from invalid insurance had same been valid, and including also the amount due from any uncollectible insurance) after application of any contribution, coinsurance, average, distribution, or other similar clauses contained in policies of such 'specific insurance' affecting the amount due thereunder, not, however, exceeding limits as set forth herein.''

Respondents now contend that the "loan" to appellant is a fiction; that since Fulton paid appellants it cannot obtain a decree for a contribution from respondents. The law is otherwise. (*Fireman's Fund Ins. Co.* v. *Palatine Ins. Co.*, 150 Cal. 252, 255 [88 P. 907]; *Luckenbach* v. *W. J. McCahan Sugar Refining Co.*, 248 U.S. 139 [39 S.Ct. 53, 63 L.Ed. 170].) In the latter case a loss occurred while the merchandise was in possession of a carrier whose bill of lading provided that the carrier shall have the full benefit of any insurance on the cargo. The policy warranted against liability for merchandise in the possession of any carrier who may be liable for loss or damage thereto. The insurer paid the shipper the amount of the loss by use of "loan receipts" whereupon action was brought in the shipper's name for the insurer's sole benefit. Mr. Justice Brandeis said that the insurer would not be liable to the shipper if the carrier was liable, but that if the insurer settled the loss before the carrier's liability had been determined the insurer would lose the benefit of all claims against the carrier to which it would be subrogated in the absence of a provision to the contrary in the bill of lading. If nothing should be recovered from the carrier the shipper could retain the loans as payment under the policies. Such devices are common business practice, declared the court and it is "creditable to the ingenuity of businessmen that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice." The doctrine thus an-

nounced is sound and is applicable here even though the policies involved there specifically provided for the procedure. ■ Moreover, respondents contend with poor grace against the method used by appellants since the loan receipts, the amendments to the drafts and the stipulation of facts clearly prove that the parties intended to devise a means of reimbursing appellants promptly with the view of later determining the liability of each insurer. Respondents knew that Fulton could have refused to pay more than its admitted liability and thereby could have compelled the assured to sue each company. The doctrine of estoppel is justly invoked against respondents' asserting the loan receipts to be fictitious.

## Two Kinds of Policies

The contracts sold to appellants by Michigan and Northwestern are standard fire insurance policies which provide fixed and inflexible coverage for which definite premiums are paid. They are known as "specific insurance." A "specific" policy covers property at a specific location in a specific amount for a specified premium. In event of a loss, the insurer is liable to the extent of its policy. If there are two or more policies of specific insurance they prorate the liability to the extent of their joint coverage. But if the assured carries a "floater" or "monthly reporting" policy, the issuer thereof shares the liability on a different basis.

If a merchant insures his merchandise in one store and pays a definite premium therefor, it is specific insurance and in event of loss he can collect the amount thereof to the extent of his loss but not exceeding the amount of his policy. But if the amount of his stock fluctuates from day to day or if he intends to move his stock from one location to another, or if he maintains several establishments, he contracts with the insurer to pay a premium on his monthly average inventory, and in event of loss he recovers the value of merchandise destroyed. Such an arrangement is effected by including in his policy a provisional amount clause such as is found in Fulton's policy, to wit:

"The amount of insurance provided for hereunder is provisional and is the amount on which the deposit premium is based, it being the intent of this insurance to insure hereunder the actual cash value of the property described herein, subject to the limits of liability and provisions for other insurance hereinafter provided."

Thus the insurance sold by the "provisional reporting" form

is not a fixed amount as in the specific insurance sold to appellants by respondents. The first premium on the Fulton policy was based upon the average value of appellants' stock estimated at $80,000. But it was subject to revision according to the monthly inventories submitted to Fulton. At the end of the policy period the actual premium rate was determined by the monthly average value of the merchandise minus the amount of such specific insurance as was in force during the same period. Paragraph 7 of Fulton's policy emphatically excludes from its coverage any peril to property named in the policy "which at the time of any loss is insured by *specific insurance* as defined in paragraph 6, until the liability of such specific insurance has been exhausted, and then shall cover only such loss or damage as may exceed the amount due from such specific insurance."

### BASIS OF RESPONDENTS' CONTENTION

■ Inasmuch as respondents' policies are of the "specific" type written on the Standard Form containing an apportionment of loss clause,* as required by section 2071, Insurance Code, they conceive that they are liable for no greater proportion of the loss suffered by appellants than the amount insured bore to the entire insurance covering the property. In this they contend in vain. Fulton's policy was written subsequent to those of respondents and it provides definitely for Fulton's liability to attach only to the loss in excess of $30,000 of insurance provided by respondents. It follows that the court below erred in ignoring the "excess" clause of the Fulton policy and in applying the apportionment clauses of respondents' policies. It has been long established that an insurance policy is merely a contract between insurer and insured; that they may contract as they please so long as they do not violate regulatory statutes; and that an "excess" policy does not attach until the full value protected by specific insurance has been exhausted. (*Fairchild* v. *Liverpool & London Fire & Life Ins. Co.*, 51 N.Y. 65; *Klotz Tailoring Co.* v. *Eastern Fire Ins. Co.*, 116 App.Div. 723 [102 N.Y.S. 82]; *Wilson & Co.* v. *Hartford Fire Ins. Co.*, 300 Mo. 1 [254 S.W. 266]; *United Underwriters Ins. Co.* v. *Powell*, 94 Ga. 359 [21 S.E. 565]; *Hale* v. *Central Manufacturers Mutual Ins. Co.*

---

*"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by, and expenses of, removal from the premises endangered by fire, than the amount hereby insured bears to the entire insurance covering such property whether valid or not, or by solvent or insolvent insurers."

(Mo.App.), 93 S.W.2d 271.) In the Klotz case the plaintiff carried three policies. Two were specific insurance and one was an excess or floater policy just as in the case at bar. Defendant's policy was for $932.05; the other specific policy was for $7,160.25 while the floating insurance of Globe & Rutgers Fire Insurance Company was for $50,000. The Globe policy contained a clause substantially the same as paragraph 7 of Fulton's policy. Defendant contended that it was liable for only its proportionate share of the total loss ($12,833.79), that the amount of its policy bore to what it claimed was the entire insurance in force at the time of the fire and that such share amounted to only $583.87, already paid. The court rejected such contention, and after approving and quoting from *Fairchild* v. *Liverpool & London Fire & Life Ins. Co., supra,* the court said: "In the light of the Fairchild case, therefore, there seems to be no doubt of the exact meaning and effect of the provision contained in the Globe Company's policy. By its terms it did not cover or protect any of the property affected by the defendant's policy of insurance; that is, it did not and could not affect any part of such property which was fully covered by defendant's policy, and failed to reach that interest in the property which was covered by defendant's policy. In this view, the Globe policy did not in any wise affect the interest in the property which was destroyed, covered by the defendant's policy and the other specific insurances; and the 'whole insurance,' referring only to the property that was covered by the defendant's policy, does not include the floating insurance, that issued by the Globe Company, for it covered other property."

The Missouri court was equally as emphatic in maintaining the doctrine thus announced. In *Wilson & Co.* v. *Hartford Fire Ins. Co., supra,* the plaintiff and other packers had procured a policy of specific insurance from defendant through the Kansas City Livestock Exchange which was comprised of all meat packers who kept their beef steers in the yards. For convenience the exchange was named as the assured. The only limitations on the Hartford insurance were that it would not exceed $150 on any one steer or $35 on any one hog. Wilson Company being insured as a member obtained an excess policy with Globe & Rutgers in the amount of $100,000 which provided that its insurance "shall be considered as surplus insurance where any specific insurance exists on any of the property hereby insured, and this insurance shall not apply or con-

tribute until the amount collectible from all such specific insurance shall have been exhausted.'' Hartford Fire maintained that it should pay nothing or only its proportionate share of the total insurance. However, the excess clause of the Globe & Rutgers policy was too explicit to be overcome by mere exclamations of disappointment. "A floating policy," said the court, "is one intended to supplement specific insurance on property, and attaches only when the latter ceases to cover the risk. The reason for the creation and the purpose of this character of policy is to provide indemnity for property which cannot because of its frequent change in location and quantity be covered by specific insurance. Floating or surplus insurance is a form of indemnity . . . By its terms it cannot become operative until the prior insurance has become exhausted.''

The excess clause of a floating policy cannot be defeated by a distinct clause of a policy of specific insurance on the same property where the pro-rata clause of the latter provides that all insurance on the property whether specific or floating is to be considered in the apportionment. In such a situation, the court held the floating policies did not insure the same property and the insurance under the floating policy did not cover any property then protected by specific insurance. (*United Underwriters Ins. Co.* v. *Powell, supra.*)

Notwithstanding the clarity and force of the cited decisions and the soundness of their logic, respondents insist that under the apportionment clauses in their policies they should be required to pay no more than that proportion of the loss which the amounts of their policies bear to the entire insurance. That amount they assert to be $133,682*, the aggregate of the face amounts of the three policies. They argue that they should be held respectively for 25,000/133,682 and 5,000/133,682 of the total loss of $34,417.64 and Fulton for 103,682/133,682, the balance of the loss. They cite *Air Transport Mfg. Co.* v. *Employers Liability Assur. Corp.*, 91 Cal. App.2d 129 [204 P.2d 647]—a decision of this court. It does not apply to the issues here involved. Pacific Indemnity first issued a public liability policy to Air Transport with a limit of $25,000 for injury to one person. The policy carried an apportionment clause similar to those in the policies of respondents at bar. Later Employers issued to American U-Drive

---

*This figure is derived from the fact that on the day of the loss the total inventory amounted to $103,682. Respondents contend that the value of the Fulton policy is equal to this sum.

Truck Rentals Company a public liability policy with a limit of $25,000 with an omnibus clause extending coverage to any person operating a vehicle with U-Drive's consent. Also, it contained a type of excess clause to the effect that if other valid insurance of the same type protected the insured, Employers' policy was to be null and void, except that if the limit of Employers' policy exceeded such other policy Employers should be liable for only such excess. Air Transport rented a car from U-Drive and an accident occurred during its use. The court determined the liability of each company as of the time of the accident, holding that because of its apportionment clause the Pacific policy did not constitute such unconditional insurance as would render void the policy of Employers and that by reason of the latter's policy, that of Pacific afforded only pro-rata insurance. There the court decided but one question; was Employers' policy rendered void because of the existence of other valid insurance? Or to be more specific, was the policy issued prior to that of Employers' valid insurance within the meaning of the "other insurance" clause of the defendant's policy? The court held that the term, "valid insurance," contemplated insurance which provides unconditional coverage and that since the Pacific policy afforded *only pro-rata* coverage it did not meet the requirement. The "excess" portion of the clause was not involved. This is readily understood by supposing there had been no excess provision whatever in defendant's policy. The court would still have determined that Employers' policy was not void and would have apportioned the liability on the basis of the apportionment clause in Pacific's policy and reached the same result, to wit, Employers was liable for one half of the loss up to $12,500. Still another distinguishing feature of the Air Transport decision is to be found in the fact that the Fulton policy conditioned that its insurance should not attach if there was other insurance, valid or invalid, on the property. Had the policy of Employers' Liability Insurance Corporation contained the same language this court could not have held otherwise than that the Employers' policy was void.

Respondents attempt to dilute the force of paragraph 7 of the Fulton policy. They cannot do so for the reason that its provisions give it a character that determines the issues of the controversy. They admit that paragraph 7 provides that the insurance of Fulton does not attach until the liability of "specific insurance" has been exhausted; that it expressly covers a loss which exceeds the *amount due from* specific insur-

ance; that it does not say that its insurance does not attach until the face value or the amount of the specific insurance is exhausted. They thereby contend that the purport of the excess clause was to afford insurance for all loss exceeding that proportion of the loss for which respondents were liable after including the amount of Fulton's policy in the apportionment; that Fulton anticipated that the liability of any specific insurance might be reduced below its face amount by such contribution, coinsurance or other similar clause contained in the specific policy. In advancing such argument respondents rely on the distinction between "amount of insurance" and "amount of liability," the former being the face value of a policy whereas the "amount of liability" is a variable factor, dependent upon the extent of the loss and the apportionment clause. "The amount of the insurance is the maximum amount of the risk assumed, the face of the policy; the amount of loss is the adjusted damage by fire to the property covered by the policy; the amount of the liability as to any particular loss is the amount of the adjusted damages properly apportionable to the policy." (*Stephenson* v. *Agricultural Ins. Co.*, 116 Wis. 277 [93 N.W. 19, 21]; see also *Farmers Feed Co.* v. *Scottish Union & Nat. Ins. Co.* 173 N.Y. 241 [65 N.E. 1105, 1107].) This distinction is proper, but the cases relied upon were concerned only with apportionment problems and in neither was there a contention by any insurer that its policy was excess over another. In a situation such as the one at bar where one policy is excess, this *liability* of the specific policies is to be determined independently of the surplus insurance. This is clear from the language of paragraph 7 itself which specifically provides that the policy "does not . . . . become insurance . . . until the liability of such specific insurance has been exhausted." It is also true that Fulton's policy anticipated a reduction of the liability of any specific policies below their face values through contribution, coinsurance or like clauses, but this provision was inserted for the benefit of the insured and not for the protection of other insurers. Such clauses are distinct from apportionment provisions. The former operate to reduce the amount the insured could recover and would function regardless of whether or not there was a provisional policy in the picture.

The implication and intendment of the judgment of the court below if held valid would foreshadow grave perils for full insurance coverage in California. If it were correct, it would render difficult and grossly expensive full protection against

loss by fire. Where a merchant has a number of establishments with a fluctuating inventory in each of them with all protected by one or more specific policies he must have the benefit of a flexible coverage to be certain of the continuity as well as the growth of his business. If he had only a $20,000 specific policy on his stock in store and a fire should destroy it while housing a $100,000 stock, the loss might prove to be tragic. To maintain specific insurance for the latter sum would be exceedingly costly. If a provisional reporting or "excess" clause policy may be carried, allowing the merchant to pay a premium on his average monthly stock he may thereby be protected fully at all times. But he cannot without great expense do so if he may not contract to report monthly the value of his merchandise on hand and pay a premium in accordance therewith. Where attempts have been made to defeat the purpose of the provisional reporting and flexible premium scheme the courts have emphatically rejected them. (*Peters* v. *Great American Ins. Co.*, 177 F.2d 773.)

Respondents have attempted to distinguish a number of authorities cited in support of the proposition that surplus insurance attaches only after the full coverage of specific policies has been exhausted. They contend that the language of the excess clause referred to in the cited decisions is utterly different from that in the Fulton policy. But a momentary perusal of the cases demonstrates that they are peculiarly apropos. Their excess clauses are substantially identical with that in the Fulton policy. In *United Underwriters Insurance Co.* v. *Powell* (94 Ga. 359 [21 S.E. 565]) the provision in a policy other than the specific insurance was "this policy shall not apply to or cover any cotton which may at the time of loss be covered, in whole or in part by . . . any more specific insurance." In response to the specific insurer for a contribution the court ruled that under the quoted clause it was not entitled thereto. The excess clauses in the Fairchild and Klotz cases, *supra,* provided that the excess policies should not cover property covered by specific insurance. In *Hale* v. *Central Manufacturers Mutual Ins. Co.* (Mo.App.) 93 S.W.2d 271, and *Cutting* v. *Atlas Mut. Ins. Co.*, 199 Mass. 380 [85 N.E. 174], the excess insurance policy provided that it should not apply until all specific insurance is exhausted. Respondents erroneously conclude that they applied the formula used in *Federal Int. Credit Bank* v. *Globe & Rutgers Fire Ins. Co.*, 7 F.Supp. 56, in computing their proportions of the liability to appellants. The monthly reporting policy in the Federal

case did not provide that it shall be "excess" over "specific" insurance. On the contrary the court held the effect of the clause was that in event of loss all insurance "both specific and monthly reporting, contributed to the loss in proportion to the amounts insured by their respective policies; the amount of contributing insurance covered by the specific policies being the amounts specified therein; and the amount of the reporting policies as contributing insurance being excess of value at risk after deducting the specified amount in the specific policies." The reporting policies in that case did not provide for "excess loss insurance but was excess contributing insurance," and would contribute with the specific policies whereas the Fulton policy provides that it will pay the excess over the liability of specific insurance.

Respondents likewise misinterpret *Wilson & Co.* v. *Hartford Fire Ins. Co., supra.* Despite their efforts to distinguish the decision by contending that "there was no excess of value at risk, and therefore the Globe Rutgers was not liable for any proportion of the loss," it is clear that the Hartford policies · had no *amount of insurance* stated but that they named a limit to be paid on any one hog or steer. The court did not suggest that the amount of insurance in relation to the value of the entire property was to be considered. The excess policy contained a paragraph to the effect that it is surplus insurance "where any specific insurance exists on any of the property hereby insured, and this insurance shall not apply or contribute until the amount collected from all specific insurance shall have been exhausted." The court held that the defendant was obliged to pay the extent of its full liability. Since the loss was only $68,000, it was fully protected by the specific policy and consequently the excess insurers escaped liability.

From a review of the authorities, considering the clear and explicit meaning of Fulton's excess clause, the effect of the judgment of the trial court is exactly what it should be if the author of that clause had concluded with a provision for Fulton to apportion any loss with the specific insurers: the antithesis of the intention of the excess clause as written.

The judgment is reversed with instructions to enter judgment as prayed. Appeal from order denying appellants' motion for a new trial is dismissed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied August 16, 1950, and respondents' petition for a hearing by the Supreme Court was denied September 25, 1950.