**FIRST NATIONAL INSURANCE CO., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORP., Defendant.**

**Civil Nos. 96–1356–B, 91–1533–B.**

United States District Court, S.D. California.

Aug. 11, 1997.

Raymond Goettsch, Teresa Cho, La Torraca and Goettsch, Long Beach, CA, for Plaintiff.

George Lazar, Richard Pekin, San Diego, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION; AND ORDER TO SHOW CAUSE

BREWSTER, District Judge.

This matter came on regularly for hearing on plaintiff's motion for summary judgment, or in the alternative for summary adjudication of issues. After careful consideration of the moving and opposing papers, the Court hereby DENIES plaintiff's motion for summary judgment, and GRANTS plaintiff's motion for summary adjudication.

### I. Introduction

This is an action brought by First National Insurance Co. ("First National") against the Federal Deposit Insurance Corporation ("FDIC") for breach of the covenant of good faith and fair dealing, restitution and breach of contract arising out of a dispute as to which of two insurers were liable for a fire loss to property.

### II. Background

#### A. Facts

First National, plaintiff in this action, issued an insurance policy to Imperial Savings ("Imperial"), American Savings & Loan Association, and ICA Mortgage Corporation. This was an umbrella policy covering all real property on which Imperial was a mortgagee. General Accident Insurance Co. ("General") issued a builders risk commercial fire policy covering the El Cajon Garden Apartments on which Imperial was listed as the mortgagee. The General and First National policy limits were $8 million and $1 million, respectively. In June of 1990, the federal government determined that Imperial was in unsound condition and appointed the Resolution Trust Corp. ("RTC") as receiver for Imperial. The FDIC, as the successor to the RTC, is the defendant in this action.[1]

---

1. This suit is against FDIC in its capacity as receiver for Imperial The Court has issued an Order to Show Cause why FDIC should not be ordered to retain independent counsel to repre-

On February 27, 1991, the apartments were destroyed by fire. The RTC submitted claims for fire loss to First National and General. First National eventually paid its policy limit of $1 million, but General denied coverage on the ground that it had sent a notice of cancellation for non-payment of premiums that was effective February 25, 1991.[2] Imperial could not determine from its records whether it had received notice of the cancellation or not, so it requested another copy of the cancellation notice from General. When Imperial received the copy, it noted that the Post Office Box number on the notice of cancellation was incorrect. and because of this fact, Imperial concluded that it had not received notification of cancellation for non-payment of premiums.

General made repeated requests to Imperial and RTC to have pertinent Imperial employees submit to statements under oath regarding Imperial's receipt of the notice of cancellation. among other issues, but RTC initially refused these requests. On November 15, 1991, RTC agreed to produce Imperial employees for examination under oath; however, once RTC learned of the suit General filed against it, RTC withdrew its agreement to produce these witnesses. It was RTC's position that once litigation was commenced, it would not submit employees to examinations under oath absent a formal notice and scheduling of a deposition.

### B. The First Suit—Civil Case No. 91–1533

General filed a declaratory relief suit against RTC on October 25, 1991, Civ.No. 91–1533, alleging that RTC forfeited its right to payment under the General policy due to its refusal to cooperate with General's investigation. RTC counterclaimed for bad faith and breach of contract, alleging that the fire loss at the El Cajon Garden Apartments was a covered occurrence under the General policy.

On August 17, 1992, RTC and First National entered into a settlement in which First National agreed to advance the policy limit of $1,000,000 for the fire loss, but reserved subrogation rights should RTC receive any money from General.

General moved for summary judgment on RTC's bad faith claim, and also on its own claim for declaratory relief. On January 5, 1993, the court granted summary judgment for General on RTC's bad faith claim, and denied General's motion for summary judgment on the coverage claim on the ground that the General policy requiring examinations under oath was not applicable to the RTC.

On June 1, 1993, First National filed a complaint in intervention, seeking to recover a portion of the $1 million it paid to RTC from General pursuant to its subrogation rights.

The suit eventually went to trial on the merits of whether the fire was an occurrence covered by General's policy and whether First National was entitled to recover some of the money it had paid to RTC. The trial court found that the fire loss was a covered occurrence under the General policy and that First National was entitled to recover a portion of the amount it had paid to RTC. The Court apportioned the fire loss between First National and General *pro rata.*

General appealed the trial court's denial of summary judgment on the issue of whether RTC's refusal to cooperate forfeited its rights to the insurance policy proceeds. RTC appealed the court's grant of summary judgment on its bad faith claim, and First National appealed the trial court's apportionment of the loss between First National and General. On May 30, 1995, the Ninth Circuit reversed the trial court's denial of General's summary judgment motion on its complaint for declaratory relief, holding that RTC had

---

sent the Imperial Federal Savings Association Receivership Estate. The Court is concerned that if a judgment is rendered against FDIC as receiver, FDIC will pay the judgment out of the estate's assets. Since the conduct at issue is RTC's conduct, and not the conduct of Imperial, the estate may have a claim against FDIC for

indemnification. This presents counsel for FDIC with a conflict of interest. Counsel cannot both represent the FDIC as receiver and the insolvent bank's estate. *See* discussion *infra* pp. 1059–60.

2. There appears to be no claim that the renewal premium had been paid by the insured.

been required to submit Imperial's employees to examination under oath at General's request, and that RTC's failure to comply was prejudicial to General's resolution of the fire loss claim. As a result, the Ninth Circuit held that RTC had forfeited its rights under the General policy. The Ninth Circuit vacated the judgment entered after trial on the complaint, counterclaim and complaint in intervention, and remanded the matter to the district court. The district court entered judgment in favor of General on the complaint and counterclaim, but the court never entered judgment on the complaint in intervention, so it remains pending. On January 7, 1997, Case No. 91–1533 was transferred to this Court, and the Court consolidated it with the instant case (Civ. Case No. 96–1356).

### C. The Second Suit—Civil Case No. 96–1356

First National has filed suit against the FDIC as receiver for Imperial Savings, contending that RTC's refusal to comply with General's demands to examine Imperial employees under oath constitutes a material breach of the settlement agreement between First National and RTC because it jeopardized First National's subrogation rights. First National, also claims that RTC's failure to cooperate with General caused its subrogation rights to be extinguished in violation of the covenant of good faith and fair dealing. Complaint ¶¶ 33–36. First National seeks compensatory damages, prejudgment interest and an award of attorney's fees.

In early May of 1997, the Court granted FDIC's motion to dismiss the FDIC in its "corporate" capacity. Both the FDIC in its receiver capacity and First National moved for summary judgment. The Court denied both motions for summary judgment, granted summary adjudication for First National as to certain issues, and stated that two issues remain in this case: (1) was the General policy valid and collectible at the time of the fire loss, and if so (2) what is the extent of the First National policy obligation to indemnify for the fire loss by virtue of the other insurance clauses of both policies.

Plaintiff now moves for summary judgment on these two issues.

■ FDIC objects to this motion, arguing that First National is seeking rulings on individual issues without seeking summary judgment as to an entire cause of action. Rule 56(d), however, provides that if a motion for summary judgment will not dispose of the whole case, the Court "shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." Fed.R.Civ.P. 56(d). Even if First National will not prevail on one of its causes of action, the Court may still grant summary adjudication as to specific issues if it will narrow the issues for trial.

### III. Discussion

### A. Whether the General Policy was Valid and Collectible

First National argues that General's notice of cancellation was defective as a matter of law, and that there was no "substantial change in risk" which would have rendered the General policy unenforceable. For these reasons, plaintiff argues that the General policy was valid and collectible at the time of the fire loss at the El Cajon Garden Apartments.

### 1. Whether Notice of Cancellation Was Defective

The Imperial–First National insurance contract contains the following provision:

**Other Insurance:** If there is any other valid and collectible insurance which would attach if the insurance provided under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

If the General policy was valid and collectible when the fire loss occurred, then First National would only have had a duty to pay RTC its proportionate share of the fire loss.[3]

---

3. *See,* discussion, *infra,* pp. 1058–59, regarding whether First National's policy is excess insur-

ance or must share the loss pro rata with the General policy.

First National argues, first, that the General policy was valid and collectible because General's notice of cancellation was defective. The following facts appear to be without dispute. When the fire loss occurred, Imperial contacted General who informed it that the policy had been terminated. General faxed a copy of the termination notice to Imperial. In reviewing the termination notice, Imperial noted that the Post Office Box number was incorrect. The two Imperial employees who deal with insurance have confirmed that they never received a notice of cancellation.[4] Based on this, First National argues that the termination was defective. Throughout the prior litigation, RTC consistently maintained that no notice of termination was ever received. Further, in the instant litigation, the FDIC has not come forward with any evidence that the notice of cancellation was actually received by Imperial.

California Insurance Code § 677.2 provides that a notice of cancellation shall be in writing and shall be delivered or mailed to the insured at the mailing address shown on the policy. The mailing address on the notice of cancellation was defective because the Post Office Box was incorrect. Imperial was prejudiced because had it received the notice prior to the effective date of termination, it might have paid the premiums, preventing the termination from becoming effective, or it might have obtained coverage elsewhere.

California courts require strict adherence to termination provisions in insurance contracts. *Naify v. Pacific Indemnity Co.*, 11 Cal.2d 5, 10, 76 P.2d 663 (1938); *Lee v. Industrial Indemnity Co., Inc.*, 177 Cal. App.3d 921, 924, 223 Cal.Rptr. 254 (1986). If a termination is defective, the policy remains in effect even if the premiums are not paid. *National Automobile & Casualty Ins. Co. v. California Casualty Ins. Co.*, 139 Cal.App.3d 336, 341, 188 Cal.Rptr. 670 (1983).

The fundamental problem with General's notice of cancellation is that it was sent to the wrong address. Two employees of Impe-

rial stated that Imperial never received the notice of cancellation. This prevented Imperial/RTC from at least taking over premium payments from its mortgagor and receiving continuing coverage. For this reason, the Court finds that the notice of termination was defective. Pursuant to Rule 56(d), the Court GRANTS plaintiff's motion for summary adjudication, finding that the issue of whether the notice of termination was defective is without substantial controversy.

## 2. The "Substantial Change in Risk" Issue and Collateral Estoppel

First National next argues that the General policy was valid and collectible because there was no "substantial change in risk known to the mortgage holder." General had argued in Case No. 91–1533 that the abandonment of the property prior to the completion of construction was a "substantial change in risk" which was known to the mortgage holder who then had a duty to inform the insurer. By not informing General, it argued that it was not obligated to pay a loss under the policy. This issue was litigated in the first case, and the trial court found that there was no substantial change in risk known to the mortgage holder.

Although an appeal was taken by General, this issue was not raised on appeal. On appeal, the Ninth Circuit vacated all judgments entered by the trial court, finding that the RTC had wrongfully refused to submit employees to give sworn statements during General's investigation of the fire loss, and ordered summary to be judgment entered in favor of General. Since the Ninth Circuit ordered summary judgment to be entered in favor of General, it never reached any of the issues raised at trial. In fact, there would never have been a trial had summary judgment been entered in favor of General on that issue. The Ninth Circuit's decision rendered the trial moot. Although the Ninth Circuit did not explicitly vacate the trial court's finding regarding "substantial change in risk," it did vacate as moot the ruling on

---

4. The Court takes judicial notice of the deposition of Mary Hunt which was submitted in support of the previous cross-motions for summary judgment in which she testified that Ms. Proctor and Mr. Roberts, the two employees who deal with insurance matters, both confirmed that they had not received a notice of cancellation from General. Hunt Depo. 53:3—54:3.

the complaint in intervention which apportioned damages between the, two insurance companies.

> Our decision absolving General of any duty to indemnify RTC for the apartment project fire loss renders First National's appeal moot. We vacate the district court's order and remand for further proceedings consistent with this opinion.

Mem. Op. at p. 1058. Thus, it appears that had the issue of "substantial change in risk" been appealed, it would also have been vacated as moot.

First National argues that the trial court's finding that there was no substantial change in risk still has preclusive effect, barring relitigation of this issue in the instant action. First National cites *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 90, 74 S.Ct. 414, 415, 98 L.Ed. 532 (1954), in which a party appealed one claim, but did not appeal a second claim. The Supreme Court noted that since no appeal was taken from a portion of the district court's ruling, the unappealed portion of the judgment remained valid and binding on the parties. This case is inapposite, however, because the lower court's order in the first case was not reversed and vacated on appeal. The portion of the judgment which was appealed was affirmed. In the instant case, the judgment in favor of RTC was set aside, and the only judgment which remains in effect is the one in favor of General.

 "A judgment that has been vacated, reversed or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *Franklin Savings Ass'n. v. Office of Thrift Supervision*, 35 F.3d 1466, 1469 (10th Cir.1994) (quoting *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir.1988)); *see also Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir.1980). No preclusive effect can be given to the trial court's finding that there was no substantial change in risk since the judgment in favor of RTC was set aside on appeal. The only judgment remaining in effect which could be given preclusive force is the judgment entered in favor of General.

 First National next argues that the law of the case doctrine bars relitigation of this issue. Once a court decides an issue, it is precluded from revisiting that issue in the same case absent clear error in the initial decision. *Milgard Tempering Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.1990). FDIC responds that the law of the case doctrine is inapplicable because the current action, Case No. 96–1356–B, is distinct from the older action, Case No. 91–1533. These two actions, however, were consolidated because the complaint in intervention was never disposed of in the first action. Thus, these two actions are now one and the same. The law of the case doctrine does not bar relitigation of this issue, however, because the judgment was set aside by the Ninth Circuit. The only operative judgment in this case is the judgment in favor of General which states that RTC's refusal to produce witnesses to give statements under oath forfeited its right to recover under the General policy. That judgment does not deal with the merits of whether the General policy was valid and collectible *at the time of the fire loss*.

 Finally, First National argues that judicial estoppel prevents FDIC from relitigating the issue of substantial increase in risk. Judicial estoppel is applied to bar a party from taking inconsistent positions in the same proceeding. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir.1996). In order for judicial estoppel to apply, a court must have adopted the position advanced by the party. *Masayesva for and on Behalf of Hopi Indian Tribe v. Hale*, 118 F.3d 1371, 1381–82 (9th Cir.1997).

> The majority of circuits recognizing the doctrine hold that it is inapplicable unless the inconsistent statement was actually adopted by the first court in the earlier litigation.... The minority view, in contrast, holds that the doctrine applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing "fast and loose" with the court..... In either case, the purpose of the doctrine is to protect the integrity of the judicial process.

**1058**

*Rissetto*, 94 F.3d at 601. The Ninth Circuit has adopted the majority opinion. *See Masayesva*, 118 F.3d at 1381–82.

■■■ This argument runs into the same problem as the collateral estoppel and law of the case doctrines. The earlier judgment rendered in favor of RTC which decided the issue of whether there was a substantial increase in risk was set aside by the Ninth Circuit. Although that court did initially adopt this position, it was rendered moot by the Ninth Circuit's subsequent reversal on other grounds. One of the reasons for judicial estoppel is to prevent inconsistent adjudications. There is no danger of this in the instant action because the earlier judgment on this issue was set aside by the Ninth Circuit. This Court declines to find that FDIC is judicially estopped from taking the legal position that there was a substantial change in risk in the present action.[5]

■■■ Moreover, whether there was a substantial change in risk and whether the fire loss was a covered occurrence under the General policy are legal conclusions. The doctrine of judicial estoppel precludes a party from taking inconsistent factual positions, but does not preclude parties from arguing different legal opinions or conclusions from one set of facts. *Bates v. Cook*, 615 F.Supp. 662, 672–73 (M.D.Fla.1984): *United States v. Siegel*, 472 F.Supp. 440, 442 n. 4 (N.D.Ill. 1979); *United States v. Certain Land and Interests in Property*, 225 F.Supp. 338, 341 (M.D.Tenn.1964); *Cf. Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir.1997) (explaining division among courts over whether judicial estoppel applies only to inconsistent factual positions, or inconsistent legal positions as well); *but see In re Cassidy*, 892 F.2d 637, 642–42 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990) (applying judicial estoppel to legal positions as well);

*Hardwick v. Cuomo*, 891 F.2d 1097, 1105 n. 14 (3rd Cir.1989) (same). Thus, as long as FDIC does not take any factually inconsistent positions, it may argue a different legal interpretation of those facts in the instant case.

For these reasons, the Court finds that the FDIC is not barred from relitigating the issue of whether there was a substantial change in risk known to the mortgage holder.

**B. Whether First National Is Entitled to Restitution and Interest**

■■■ First National argues that since it was only obligated to pay RTC to the extent that other valid and collectible insurance did not cover the loss, it is entitled to restitution of the $1 million it paid RTC. First National cites *Gillies v. Michigan Millers Mut. Fire Ins. Co.*, 98 Cal.App.2d 743, 221 P.2d 272 (1950), to support its claim for restitution. In *Gillies*, five insurance companies had policies which covered a fire loss. Together they paid their insured for the fire loss, then sued each other for a determination of their relative shares. Several policies covered specific, enumerated goods. Another policy was an umbrella, or floater policy which covered the average number of goods or stock maintained by the merchant in any given month, subject to an inventory turned over to the insurer once a month. In the instant case, the General policy provided specific insurance for fire loss at the El Cajon Garden Apartments, while the First National policy was an umbrella floater policy maintained for all properties on which Imperial was the mortgagee.

The umbrella policy in *Gillies* provided that it was excess insurance, and the specific insurance policies all provided that they would share the loss *pro rata* with any other valid and collectible insurance. The court

---

**5.** Although the Court is not finding any bar to relitigation of this issue, that does not mean that statements by Imperial/RTC in the first action cannot serve as admissions in the present action. FDIC may now take an inconsistent legal position, however, it may not take an inconsistent position on factual matters which were admitted in the first trial. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."). Thus, evidence from interrogatories, pleadings, and other sources available from the first trial indicating that RTC had no knowledge of the substantial change in risk are admissible against RTC/FDIC in the present action. This Court, however, will have to make the legal conclusion of whether the fire loss at the El Cajon Garden Apartments was a covered occurrence under the General policy.

found that all of the specific policies shared the loss with each other *pro rata,* and that the floater policy was excess insurance which would only cover the loss to the extent that it was not covered by all of the specific policies. *Id.* at 747–49, 221 P.2d 272. First National argues, by analogy, that its policy is excess to the General policy, and that it is entitled to restitution of the entire $1 million it paid RTC. There are two flaws in this argument. First, it presupposes that the General policy was valid and collectible at the time of the fire loss. There is a genuine issue of material fact as to this issue which must be resolved at trial. Only if the General policy was valid and collectible will First National have a right to restitution.

Second, the specific insurance policies at issue in Gillies each stated that it would share the loss *pro rata,* while the umbrella policy stated that it was excess insurance. In the instant case, the General policy states that it is excess insurance.

> If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.

Likewise, the First National policy provides:

> **Other Insurance:** If there is any other valid and collectible insurance which would attach if the insurance provided under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

■ Rather than having one *pro rata* policy and one excess policy, we have two excess policies in this case. When two excess policies conflict, courts will force both carriers to prorate. in derogation of the policy language. *CSE Ins. Group v. Northbrook Property & Casualty Co.,* 23 Cal.App.4th 1839, 1842, 29 Cal.Rptr.2d 120 (1994); *Highlands Ins. Co. v. Continental Casualty Co.,* 64 F.3d 514, 520 (9th Cir.1995).

FDIC responds that the Court is not bound by the earlier trial court's allocation of the loss *pro rata* between the parties. While this is true, it does not mean that its allocation was incorrect. If the General policy is found to have been valid and collectible and FDIC has no meritorious affirmative defenses, then the Court will allocate the fire loss *pro rata.* Under these circumstances, FDIC would be forced to repay First National the difference between the $1 million it paid RTC and one ninth of the fire loss.

Finally, First National seeks an award of prejudgment interest on the amount it seeks to recover through restitution. Since the Court cannot grant summary judgment in favor of First National, the issue of whether it is entitled to prejudgment interest is not yet ripe.

## IV. Order to Show Cause

■ The Federal Deposit Insurance Corporation ("FDIC") is ORDERED to show cause why it should not be required to retain independent counsel to represent the Imperial Federal Savings Association Receivership Estate in the above-entitled matter.

This action is being maintained by First National Insurance Co. ("First National") against FDIC in its capacity as receiver for the Imperial Federal Savings Association Receivership Estate ("receivership estate" or "estate"). Plaintiff's complaint alleges that the actions of RTC, FDIC's predecessor, breached the insurance policy between First National and Imperial Savings. This action alleges wrongdoing by the receiver itself, not by the estate or employees of the estate. If a judgment were to be entered in this case against FDIC-receiver, there is an issue as to whether the judgment will be paid by FDIC out of the federal treasury, or whether it will be paid out of the assets of the receivership estate. If a judgment were to be paid out of the receivership estate, the estate may have a claim against the FDIC for its actions in breaching the insurance contract. Just as a trustee in bankruptcy may breach his fiduciary duty to the bankruptcy estate by negligently or intentionally taking actions which cause the estate to forfeit its assets, so may a receiver breach its fiduciary duty by negligently or intentionally causing the receivership estate to forfeit its assets. If the FDIC pays the judgment out of receivership estate assets, the estate may sue the FDIC for indemnity. If the estate lacks any remaining

assets, First National might not be able to collect on its judgment. As a creditor of the estate, however, First National might petition the Court for leave to file suit against the FDIC on behalf of the estate. In either case, this would generate a third round of litigation regarding the fire loss at the El Cajon Garden Apartments. Rather than generating another round of litigation, the Court seeks to resolve this issue in the present action.

If the FDIC maintains that any judgment rendered in this case will be paid out of assets of the receivership estate, there is a conflict of interest between the FDIC and the receivership estate. For this reason, one counsel cannot represent both interests. Accordingly, FDIC is ORDERED to inform the Court whether any judgment rendered will be paid out of the federal treasury or the assets of the receivership estate. If the FDIC states that a judgment will be paid by the estate, it is ORDERED to show cause why its counsel should not be disqualified unless FDIC retains independent counsel to represent the receivership estate.

A hearing will be held on this matter on September 15, 1997 at 10:30 a.m. FDIC's response to this order to show cause is due no later than August 29, 1997. First National's reply is due no later than September 5, 1997.

### V. Conclusion

For the above reasons, the Court DENIES plaintiff's motion for summary judgment, and GRANTS plaintiff's motion for summary adjudication, finding that General's notice of termination was defective, and that if the General policy is found to have been valid and collectible, then the fire loss will be divided *pro rata* based on the policy limits of the General and First National insurance policies.

Finally, the Court ORDERS FDIC to show cause why it should not be required to retain independent counsel to represent the receivership estate.

IT IS SO ORDERED.